

**IT IS ORDERED as set forth below:**


**Date:  February 26, 2015**
_____

**W. Homer Drake**
**U.S. Bankruptcy Court Judge**

_____


**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**NEWNAN DIVISION**

| | | |
|---|---|---|
| **IN THE MATTER OF:** | : | **CASE NUMBER** |
| | : | |
| JOHN D. MURRAY, SR. | : | 14-12585-WHD |
| DEBORAH D. MURRAY, | : | |
| | : | |
| | : | IN PROCEEDINGS UNDER |
| | : | CHAPTER 11 OF THE |
| Debtors. | : | BANKRUPTCY CODE |

## O R D E R

Before the Court is the *Motion to Dismiss Case, or in the Alternative, for
Relief from Automatic Stay* (hereinafter the "Motion"), filed by Green Tree
Servicing, LLC (hereinafter "Movant") in the bankruptcy case of John Murray, Sr.,
and Deborah Murray (hereinafter the "Debtors").  The Motion seeks dismissal of
the Debtors' bankruptcy case pursuant to section 1112(b) of the United States

Bankruptcy Code (hereinafter the "Code")[1] as a bad faith filing. This matter

constitutes a core proceeding, over which this Court has subject matter jurisdiction.

*See* 28 U.S.C. § 157(b)(1); § 157(b)(2)(A); § 1334; *In re Sterling Bluff Investors,*

*LLC,* 515 B.R. 902, 905 (Bankr. S.D. Ga. 2014).

### FACTS AND PROCEDURAL HISTORY

On April 5, 2013, the Debtors filed a voluntary petition under Chapter 7 of

the Code (hereinafter the "Chapter 7 Case"), and Theo Davis Mann was appointed

trustee (hereinafter the "Chapter 7 Trustee"). *See* Case No. 13-10894-WHD. At

that time, the Debtors scheduled joint ownership of real property known as 225

Lake Circle, Carrollton, Georgia (hereinafter the "Property"), which they disclosed

on Schedule A with a value of $150,000. The Debtors further disclosed on

Schedule D that the Property was encumbered by a first mortgage held by Movant,

which secured a debt in the amount of $147,539 (incurred in 2010), and a lien held

by Certus Bank (hereinafter "Certus"), securing in part a "line of credit," which

was opened in July 2006 and had a balance of $14,800 ($12,339 of which was

classified as unsecured). On Schedule F, the Debtors disclosed that Certus also

---

[1] 11 U.S.C. §§ 101, et seq.

held a claim for $225,000, which the Debtors described as one which "originally arose as a [third] mortgage on [the Property], which is now unsecured due to value of property."   Schedule F further noted that the Certus debt "was borrowed for business expenses of Debtor, P&P Sanitation, Inc."   During the hearing on the Motion, the Debtors' attorney confirmed that the Certus lien arose from the Debtors' guarantee of a business debt.

In August 2013, after the Chapter 7 Trustee filed a "no-distribution" report, the Court discharged the Debtors and closed the Chapter 7 Case.  On January 17, 2014, the Debtors filed a motion to reopen the Chapter 7 Case for the purpose of filing an adversary proceeding to determine the validity, extent, or priority of a lien.  Once the Court had reopened the case, the Debtors filed a complaint seeking a declaration that Movant held no valid lien on the Property.  In their complaint, the Debtors alleged that, although it purported to transfer an interest in the Property, the February 2010 deed to secure debt executed by the Debtors in favor of Movant's predecessor in interest (hereinafter the "Security Deed") actually described 382 Lake Circle, Carrollton, Georgia, rather than the Property.  *See* Complaint, ¶ 4, Case No. 14-1015 (Dkt. No. 1).

After answering the complaint and raising a counterclaim for reformation of

3

the Security Deed and equitable subrogation under Georgia law, Movant sought dismissal of the complaint for lack of subject matter jurisdiction over the Debtors' claims. The Court granted Movant's unopposed motion to dismiss on September 16, 2014. *See* Order Granting Motion to Dismiss, Case No. 14-1015 (Dkt. No. 18). Following the dismissal of the adversary proceeding, on October 15, 2014, Movant filed suit in the Superior Court of Carroll County (hereinafter the "State Court Action"), seeking the reformation of the Security Deed, declaratory relief, equitable subordination, and an equitable lien. *See* Amended Complaint, ¶ 10, Case No. 14-1066 (Dkt. No. 6).

Less than a month later, on November 14, 2014, the Debtors filed a voluntary petition under Chapter 11 of the Code, which initiated the instant case (hereinafter the "Chapter 11 Case"). The Debtors' schedules indicate that the Debtors continue to own the Property. The Debtors now assert that Certus is the only secured creditor, with a claim of $150,000, which was "[o]pened 7/03/2006" and fully secured by the Property. The Debtors scheduled no unsecured claims and no executory contracts or unexpired leases. According to Schedule I, the Debtors receive combined monthly income of $6,992. On Schedule J, the Debtors scheduled expenses of $6,311, with disposable monthly income of $680.27. In the

4

Chapter 7 Case, the Debtors disclosed that their home mortgage payment was $1,390 per month, inclusive of real estate taxes, but exclusive of property insurance. On the Schedule J filed in the Chapter 11 Case, the Debtors have scheduled a monthly housing expense of $2,667.84, apparently inclusive of real estate taxes and property insurance, the bulk of which appears to be a payment to Certus, as the Debtors' counsel confirmed during the hearing that the Debtors are not making ongoing payments to Movant.

On December 2, 2014, Movant filed a motion to dismiss the case as a bad faith filing or, in the alternative, a motion for relief from the stay to permit Movant to continue with the State Court Action. Movant's primary basis for its assertion that the Debtors filed the Chapter 11 Case in bad faith is that the Debtors filed the Chapter 11 Case for the sole purpose of preventing Movant from continuing the State Court Action and that the matter is essentially a two-party dispute between the Debtors and Movant. The Debtors do not dispute that the litigation filed by Movant prompted them to file the Chapter 11 Case, but argue that they filed the case for a proper purpose—retaining their home, which they cannot do without a determination regarding Movant's interest in the Property.

The Court agrees with Movant that the Debtors filed a Chapter 11 petition

5

for the improper purpose of preventing Movant from obtaining a determination of whether it has a valid interest in the Property in the proper forum. Although the Debtors may eventually have needed bankruptcy relief to allow them to retain their home, they were not being pressured with an immediate foreclosure and could have waited until the State Court Action was resolved to file a Chapter 13 petition. They chose to file a Chapter 11 petition, rather than an answer in the State Court Action, solely to gain a litigation advantage against Movant through the use of the trustee's "strong arm powers," which, the Court concludes, cannot be used solely for the Debtors' benefit, and should not be used to provide Certus with additional rights it would not have had outside of bankruptcy.

## CONCLUSIONS OF LAW

Section 1112(b) of the Bankruptcy Code governs the dismissal of a Chapter 11 case upon request of a party in interest other than the debtor. 11 U.S.C. § 1112(b). "[O]n request of a party in interest, and after notice and a hearing, the court shall convert . . . or dismiss a case . . . , whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors

6

and the estate." 11 U.S.C. § 1112(b)(1).[2]  To obtain a dismissal under section 1112(b)(1), the movant must first establish "cause" to dismiss or convert a case. *See id.* § 1112(b)(1).  If the moving party establishes cause, the burden shifts to the debtor, who must then show "unusual circumstances" justifying the continuance of the case in Chapter 11.  If the debtor cannot overcome the finding of cause for dismissal or conversion, the Court will be required to determine whether appointment of a Chapter 11 trustee, or conversion to Chapter 7, rather than dismissal, would be in the best interest of the estate.

Section 1112(b)(1) enumerates several non-exhaustive examples of "cause" for dismissal or conversion.  Additionally, a "lack of good faith in filing a Chapter 11 petition may also constitute cause for dismissal."  *In re Sterling Bluff Investors, LLC,* 515 B.R. 902, 915 (Bankr. S.D. Ga. 2014) (citing *In re Pegasus Wireless Corp. v. Tsao (In re Pegasus Wireless Corp.*), 391 F. App'x 802, 803 (11th Cir.

---

[2]  Section 1112(b)(2) further provides that, absent unusual circumstances, the Court may not convert or dismiss the case, despite a finding of cause, if the Debtor shows: (1) there is a reasonable likelihood a plan will be confirmed within the statutorily mandated time-frame, or if no time-frame exists, within a reasonable time; (2) the grounds for converting or dismissing the case include acts or omissions by the debtor other than substantial losses to the estate; and (3) there exists a reasonable justification for the act or omission demonstrating cause, and the act or omission can be cured within a reasonable time fixed by the court. *See id.* § 1112(b)(2).  As the grounds for the Motion is not an act or omission of the Debtors that can be cured, the Court finds that section 1112(b)(2) does not apply.

2010); *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 674 (11th Cir. 1984)).   Whether a Chapter 11 case was filed in bad faith requires the Court to examine the totality of the circumstances.  *See id.*   In conducting this analysis, courts generally consider several factors, including: (1) whether the debtor has few or no unsecured creditors; (2) whether there has been a previous bankruptcy petition by the debtor or a related entity; (3) whether the prepetition conduct of the debtor has been improper; (4) whether the petition effectively allows the debtor to evade court orders; (5) whether there are few debts to non-moving creditors; (6) whether the petition was filed on the eve of foreclosure; (7) whether the foreclosed property is the sole or major asset of the debtor; (8) whether the debtor has no ongoing business or employees; (9) whether there is no possibility of reorganization; (10) whether the debtor's income is sufficient to operate; (11) whether there was no pressure from non-moving creditors; (12) whether reorganization essentially involves the resolution of a two-party dispute; (13) whether a corporate debtor was formed and received title to its major assets immediately before the petition; and (14) whether the debtor filed solely to create the automatic stay.  *In re Curtis L. Stuart@UCC1-207*, 2005 WL 3953894, at *4 (Bankr. N.D. Ga. Dec. 19, 2005) (Massey, J.); *see also In the*

8

*Matter of Northwest Place, Ltd.*, 73 B.R. 978, 981 (Bankr. N.D. Ga. 1987) (Kahn, J.).

But these factors are not exclusive, *In re Curtis L. Stuart@UCC1-207*, 2005 WL 3953894, at *4, and each factor is not always particularly relevant to the facts and circumstances of the case.    Courts rely on these factors, along with other evidence, to determine whether a debtor filed a case with "'an intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, . . . 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393, 1394 (11th Cir. 1988). Potentially more pertinent to this case than consideration of many of the factors listed above are facts suggesting that the "true purpose of filing a petition [was] other than to reorganize a financially distressed business, but to merely take advantage of one of the remedies available under the Code." *Northwest Place*, 73 B.R. at 982.

For example, a bad faith filing may be found where an otherwise solvent and healthy debtor files bankruptcy solely to avoid or reject an executory contract or unexpired lease, the terms of which it has since come to regret. *See, e.g., In re Waldron*, 785 F.2d 936, 939-41 (11th Cir. 1986) (finding that a Chapter 13 case

9

was not filed in good faith where the debtors "were not financially distressed and had no real need for the bankruptcy process" and filed the case solely to reject an "unprofitable" option agreement); *In re Dixie Broadcasting, Inc.,* 871 F.2d 1023, 1027 (11th Cir. 1989) (affirming the bankruptcy court's finding of cause to lift the automatic stay where the debtor had no financial problems and simply "entered bankruptcy to get out of its bad deal"); *In re Dunes Hotel Assocs.,* 1997 WL 33344253, at *16 (Bankr. D.S.C. Sept. 26, 1997) ("While . . . it is not bad faith under § 1112 for a debtor to file bankruptcy to preserve or defend its equity in [property], that is very different indeed from using §§ 544 and 550 or § 365 to affirmatively avoid an otherwise binding contract solely in order to create additional equity or value for the sole benefit of the Debtor, its general partners or GEPT.").

These cases should be distinguished, however, from cases in which, although solvent, the debtor has cash flow problems that render the debtor unable to pay debts as they come due.  In such cases, a bankruptcy filing serves the legitimate bankruptcy purpose of protecting the debtor from collection actions and allowing the debtor an opportunity to reorganize so that it can pay some amount to creditors, even if it also happens to enable the debtor to benefit from a particular

10

bankruptcy remedy, such as the right to reject an executory contract. *See In re Watkins*, 210 B.R. 394, 399 (Bankr. N.D. Ga. 1997) (Cotton, J.) (denying motion to dismiss Chapter 11 petition of a solvent Chapter 11 debtor on the basis of bad faith, even though the case would permit the debtor to benefit from the rejection of an unfavorable executory contract, because the debtor also had a legitimate need for bankruptcy relief due to significant cash flow problems).

Having considered the unique facts and circumstances of this case, the Court concludes that the Debtors filed the Chapter 11 petition in bad faith. The filing of the Chapter 11 Case meets several of the traditional bad faith factors. The Debtors have *no* unsecured creditors, and, although two parties assert liens on the Debtors' property, these parties can protect their lien rights by litigating the priority of the liens in state court. Due to the Debtors' prior Chapter 7 discharge, not even Certus or Movant will have a deficiency claim to assert against the Debtors' bankruptcy estate. Thus, the Debtors' filing will not serve one of the primary purposes of a Chapter 11 case—ensuring equality of distribution of a debtor's limited assets. Indeed, from the perspective of Movant and Certus, the only question is whether Movant has a valid lien on the Property, or whether Certus would be free to foreclose its lien without regard to Movant's interest. Here, the Court notes that

11

Certus, the only entity other than the Debtors that would benefit from the continuance of the Chapter 11 Case, has neither appeared nor opposed the dismissal of the case.

Further, although, as the Debtors point out, the Debtors did not file the Chapter 11 Case on the eve of foreclosure, it is patently clear from the only evidence submitted to the Court—Mr. Murray's testimony at the Debtors' meeting of creditors—that the Debtors filed the Chapter 11 case because they believed Movant might prevail in obtaining reformation in the State Court Action and a Chapter 11 case would enable them to defeat Movant's interest in the Property. There is no evidence that the Debtors were under any pressure from any non-moving creditors asserting a right to collect debts or foreclose on property. The Debtors apparently had sufficient income to meet their ongoing living expenses and to make payments to Certus sufficient to forestall any action Certus might take against property of the Debtors or their incorporated business. In short, there was no immediate need for the Debtors to file a bankruptcy case. The Debtors clearly chose to file the case as a Chapter 11, rather than a Chapter 13, instead of filing an answer in the State Court Action, solely to gain a litigation advantage and to benefit from a particular remedy of the Code that would have been available to the

12

Debtors only in a Chapter 11 case.[3]

Finally, the Debtors make much of the argument that this is not a two-party dispute between the Debtors and Movant.  Rather, they argue that this is a three-party dispute between the Debtors, Movant, and Certus and, therefore, the case does not implicate that particular bad faith filing factor.  In reality, however, this *is* a two-party dispute, but, contrary to Movant's arguments, the two parties to this dispute are Movant and Certus, rather than Movant and the Debtors.

Under the apparent facts of this case, without the trustee's strong arm powers, the Debtors would likely have no defense to Movant's right to equitable reformation of the Security Deed.  *See In re Thompson*, 499 B.R. 908, 913 (Bankr. S.D. Ga. 2013) (rejecting Chapter 13 debtor's argument that bank should not be granted equitable reformation of a security deed to correct a mutual mistake in the

---

[3]  In Chapter 7 and Chapter 13 cases, a debtor lacks statutory authority to seek avoidance of an unperfected interest in property under section 544.  *See In re Thompson*, 499 B.R. 908, 912 (Bankr. S.D. Ga. 2013) (holding that "a chapter 13 debtor, standing alone, may not invoke the trustee's statutory powers under § 544(a)(3) as a defense in a reformation action, except in the narrow confines of § 522(h)").  Individual Chapter 7 and Chapter 13 debtors may have the ability to seek avoidance of such an interest under section 522(h) to protect exempt property.  *See id.; see also In re Bell,* 279 B.R. 890, 898 n.7 (Bankr. N.D. Ga. 2002) (Bonapfel, J.).  However, the interest at issue here would not be subject to section 522(h) because the Debtors voluntarily transferred the interest in the Property to Movant.  *See* 11 U.S.C. §§ 522(h), (g); *Thompson*, 499 B.R. at 912 (holding that Chapter 13 debtor lacked standing under section 522(h) to assert section 544(a)(3) as a defense to the bank's reformation action because the transfer of the security deed listing the incorrect legal description was voluntary).

13

legal description because such relief would prejudice the debtor by causing her to lose her home, noting that such prejudice is not sufficient under Georgia law to deny reformation where the "Debtor contracted and intended to pledge [the property] as collateral for th[e] loan" and "has had the use of loan proceeds and has used the funds to satisfy earlier debt on" the collateral) (citing *DeGolyer v. Green Tree Servicing, LLC*, 662 S.E.2d 141, 146 (Ga. Ct. App. 2008)).  Certus might have a basis to oppose reformation or equitable subrogation to the extent that its interest in the Property would be prejudiced.  But permitting the Debtors to remain in Chapter 11 and wield the trustee's "strong arm powers" would merely give Certus (and only Certus, as the Debtors have no other creditors), a remedy against Movant's claims for reformation and subrogation that it would have lacked outside of bankruptcy.  This is an inappropriate outcome that unnecessarily interferes with state law when no overriding federal principles would be achieved.  Rather, Movant and Certus should be left in the same positions they would have occupied had no bankruptcy case been filed.  In this manner, the issue of the liens on the Property will properly be resolved under state law without the overlay of federal bankruptcy law. *Accord Adelphia Recovery Trust v. Bank of Am., Nat'l Ass'n*, 390 B.R. 80, 94 (S.D.N.Y. 2008) (relying upon the "goal of respecting state law

14

inherent in the narrow interpretation of the Bankruptcy Code's fraudulent conveyance provisions permitting avoidance only for the benefit of creditors," to support its conclusion that a liquidating trustee lacked standing to avoid a transfer where all of the creditors of the debtor had been paid in full with interest).

All of the bad faith filing factors implicated in this case point to the conclusion that the Debtors filed this case under Chapter 11 with "an intent to abuse the judicial process and the purposes of the reorganization provisions" and "to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." In this regard, the Debtors' case is similar to *In re Northwest Place, Ltd.*, 73 B.R. 978, 983 (Bankr. N.D. Ga. 1987), in which Judge Kahn dismissed a Chapter 11 case filed solely for the purpose of utilizing the trustee's "strong arm" powers for the primary benefit of the debtor's equity holders.

In *Northwest Place*, the Chapter 11 debtor filed the case for the sole purpose of avoiding and recovering a transfer that had been made by the debtor in accordance with a settlement agreement. *Id*. at 980. The debtor was solvent, had very few unsecured debts, most of which were owed to related entities, and owned only one asset, an office building. *Id*. at 979-81. The Court determined that, since the avoidance and recovery suit would inure solely to the benefit of the debtor's

15

equity holders, the filing of a Chapter 11 petition solely to allow the equity holders to avoid a prepetition bargain made by the debtor would be an improper use of Chapter 11.[4]  *Id*. at 982.

This Chapter 11 case is essentially no different than *Northwest Place*.  The Debtors' use of the avoidance power would not benefit the Debtors' creditors, as all liability for any debt existing at the time of the filing of the Chapter 7 Case has been discharged and the Debtors have no plans to pay any of it in any

---

[4]  The Court acknowledges that some courts have held that nothing in the Code requires the avoidance powers be utilized for the benefit of unsecured creditors.  *See In re Mirant Corp.*, 675 F.3d 530 (5th Cir. 2012).  Indeed, avoided transfers may be recovered under section 550(a) of the Code "for the benefit of the estate" and avoided interests are automatically preserved "for the benefit of the estate," 11 U.S.C. § 550(a); § 551, and the interests of the "estate" may be broader than the interests of unsecured creditors.  In determining whether an avoided transfer would benefit the estate, some courts ask whether the avoidance of a transfer will "increase the value of the debtor's estate and/or improve the debtor's prospects for rehabilitation and reorganization." *In re Dunes Hotel Assocs.*, 194 B.R. 967, 985 (Bankr. D.S.C. 1995) (citing *In re Trans World Airlines, Inc.*, 163 B.R. 964, 972 (Bankr. D. Del. 1994)).  But even so, courts have required that the avoidance and recovery of a transfer result in some benefit, direct or indirect, to a party other than the debtor.  *Id*. (citing *Wellman v. Wellman*, 933 F.2d 215, (4th Cir. 1991)).  Even under a broader interpretation of "benefit of the estate," the avoidance of a creditor's lien could not benefit creditors, directly or indirectly, if the Chapter 11 debtor has no creditors who depend on the success of the reorganized debtor going forward for payment of their claims.  *In re Glanz*, 205 B.R. 750, 758 (Bankr. D. Md. 1997) (recognizing that "equitable principles may be applied to bar a lien avoidance action where the avoidance does not accrue to the benefit of creditors but instead creates a windfall for the debtor"); *Adelphia Recovery Trust v. Bank of Am., Nat'l Ass'n*, 390 B.R. 80, 93 (S.D.N.Y. 2008) ("'It would be a mockery of justice to say that the alleged bankrupt may claim through and in the right of creditors whose debts have been paid and discharged; that he may avoid a transaction, valid as to himself but voidable as to creditors, in the right of non-existing creditors.'" (quoting *Whiteford Plastics Co. v. Chase Nat'l Bank*, 179 F.2d 582, 584 (2d Cir. 1950))).

reorganization case.  Indeed, the Debtors' counsel forthrightly admitted during the hearing that the only party to benefit from the case would be the Debtors.

The Debtors' case can, of course, be distinguished from *Northwest Place* on the basis that it involves individual debtors who cannot simply be liquidated and dissolved under state law.  One might argue that the fact that the Debtors cannot pay the debt held by both lien holders justifies their filing bankruptcy.  The Court agrees that the Debtor's probable need to file a reorganization plan to deal with either or both liens on the Property justifies their seeking bankruptcy relief.  It does not follow, however, that the timing of the filing and the choice of filing Chapter 11 over Chapter 13, was not made in bad faith.  *See, e.g.*, *In re Derma Pen, LLC*, 2014 WL 7269762, at *8 (Bankr. D. Del. Dec. 19, 2014) ("While 'drafters of the Bankruptcy Code understood the need for early access to bankruptcy relief to allow a debtor to rehabilitate its business before it is faced with a hopeless situation . . . such encouragement . . . does not open the door to premature filing, nor does it allow for filing of a bankruptcy petition that lacks a valid reorganizational purpose.'").

The Court does not ignore the probability that the Debtors will eventually need a reorganization plan.  If Movant is successful in its attempt to reform the

17

Security Deed in the State Court Action, it is unlikely that the Debtors would be able to retain their home, absent the voluntary agreement of the lien holders, without a plan that provides for curing the default of the debt owed to Movant and possibly of the debt owed to Certus.  Even if Movant loses the State Court Action, the Debtors may need a reorganization plan to restructure the terms of the debt owed to Certus and to keep Certus from foreclosing on the Property.  That being said, the Debtors had no immediate need to file the Chapter 11 Case.  They had no unsecured creditors, and Movant and Certus were not attempting to foreclose. According to their bankruptcy schedules, the Debtors appear to have had sufficient funds to keep Certus from attempting to foreclose on the Property and to meet their living expenses.

In short, the Court sees no reason why the matter of Movant's interest in the Property cannot be resolved in the State Court Action first, at which point, if the Debtors find they need bankruptcy relief to retain the Property, they will be free to seek such relief by filing a less costly and less complicated Chapter 13 case. Alternatively, the Court, with the consent of the Debtors, could convert the Chapter 11 Case to one under Chapter 13, pursuant to section 1112(d), and the Debtors would not even lose the protection of the automatic stay, except for the Court's

18

granting limited relief to Movant to prosecute the State Court Action.  Here, the Court notes that the Debtors' best interest would likely be served by the conversion of the case to Chapter 13, as it would avoid the Debtors' having to file a new Chapter 13 case after the resolution of the State Court Action.  It would also relieve the Debtors of the requirement of filing monthly reports and paying fees to the United States Trustee, while also simplifying the process of proposing and obtaining confirmation of a plan.[5]

Having thoroughly considered the evidence presented and the arguments of counsel, the Court finds that the Chapter 11 Case was filed in bad faith.  The Court will allow the Debtors an opportunity to request the conversion of the case to Chapter 13, pursuant to section 1112(d) of the Code.  If the Debtors do not so request, the Court will dismiss the case.  Movant's alternative relief—lifting the automatic stay to permit the State Court Action—will either be rendered moot (if the Chapter 11 Case is dismissed) or, if the Chapter 11 Case is converted to Chapter 13, the Court will defer ruling on the requested relief to allow the Standing

---

[5]  For example, unlike a Chapter 11 debtor, a Chapter 13 debtor need not incur legal expenses for drafting and obtaining approval of a disclosure statement.  *See* 11 U.S.C. § 1125.  Further, a Chapter 13 debtor can obtain confirmation of a plan, pursuant to section 1325, if the plan satisfies the confirmation requirements of the Code, without regard to whether an impaired class of creditors will vote to approve the plan.  *Compare* 11 U.S.C. § 1325, *with* 11 U.S.C. § 1129(a)(10).

Chapter 13 Trustee a short opportunity to consider whether he opposes such relief.

## CONCLUSION

For the reasons stated above, Movant's Motion to Dismiss, or in the Alternative, for Relief from the Automatic Stay, is GRANTED, subject to the following terms.

The Debtors shall have fourteen (14) days within which to request the conversion of the Chapter 11 Case to one under Chapter 13. Should the Debtors do so, the Court will enter an order converting the Chapter 11 Case to Chapter 13, pursuant to section 1112(d). Upon conversion of the case, Movant shall serve the Standing Chapter 13 Trustee (hereinafter the "Chapter 13 Trustee") with a copy of the Motion. If the Chapter 13 Trustee: (1) consents to the lifting of the stay; or (2) fails, within twenty (20) days of being served with Motion, to oppose the lifting of the stay (or otherwise request additional time to investigate the matter), Movant's counsel may submit a proposed order lifting that automatic stay for the limited purpose of allowing Movant to proceed in the State Court Action to obtain a determination of its interest in the Property, and the Court will enter such order immediately and without a hearing.

If the Debtors do not request the conversion of the Chapter 11 case to one

20

under Chapter 13 within the fourteen-day period, the Court will enter an order dismissing the Chapter 11 Case.

The Clerk of the Court is DIRECTED to serve a copy of this Order on all parties in interest, including the Debtors, the Debtors' counsel, Movant's counsel, and the United States Trustee.

**END OF DOCUMENT**